IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GINGER HOLT, M.D.,

     Plaintiff,

vs.

                                      Civil Action No: 3:23-cv-00179

                                      Chief Judge Crenshaw

VANDERBILT UNIVERSITY and       Magistrate Judge Frensley
VANDERBILT UNIVERSITY
MEDICAL CENTER,                       (Jury Trial Requested)

     Defendants.

_____/

## AMENDED COMPLAINT

Dr. Ginger Holt, a nationally recognized orthopaedic oncology surgeon, has been subjected to discrimination and retaliatory harassment on the basis of her sex, female, and sexual orientation by Defendants, Vanderbilt University ("VU") and Vanderbilt University Medical Center ("VUMC") who jointly employ Dr. Holt. Despite leading one of the most successful orthopaedic residency programs in the country, as well as performing job duties as a successful professor and physician, Dr. Holt has been consistently held to a higher standard than her male colleagues, been removed from a role she held for years as Program Director and Vice Chair of Education, and had her salary cut in half. All of these decisions were made by her straight male supervisor and were done because of Dr. Holt's sex, sexual orientation, and in retaliation for complaints of discrimination on behalf of herself and female residents. Thus, Dr. Holt brings claims for violations of the Tennessee Human Rights Act and Title IX of the Education Amendments of 1972 against Defendants Vanderbilt University Medical Center and Vanderbilt University, and Title VII of the Civil Rights Act of 1964 against Defendant Vanderbilt University Medical Center.

1

## JURISDICTION AND VENUE

1.      This is an action for declaratory and monetary relief caused by Defendant's violations of the Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-101 *et seq.*, Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").

2.      This court has jurisdiction over the subject matter of this Amended Complaint, and venue in this Court is proper in Davidson County under 28 U.S.C. §§ 1331, 1391.

## PARTIES

3.      Plaintiff, Dr. Ginger Holt, ("Dr. Holt") is a homosexual woman who is an employee of Vanderbilt University Medical Center and Vanderbilt University.

4.      Defendant Vanderbilt University ("Vanderbilt" or "VU") is a nonprofit corporation. Its principal place of business is 2100 West End Ave Suite 750, Nashville, TN 37203-5233. Its registered agent for service of process is Vanderbilt University, 305 Kirkland Hall, General Counsel, Nashville, TN 37240-0001. VU operates a School of Medicine where Dr. Holt is a Faculty member.

5.      VU jointly employs Dr. Holt with VUMC because the VU Faculty Manual covers certain aspects of her employment, and she has reporting structures within VU. For example, Dr. Holt is reappointed every year to VU's School of Medicine as a Professor of Orthopedic Surgery, Clinician Educator Track and the reappointment is made in accordance with the provisions established by the Faculty Manual of Vanderbilt University. For example, her 2021 reappointment letter on VU letterhead states: "this renewal and your employment by Vanderbilt University Medical Center are contingent upon your maintaining your appointment in good standing at all times" this reappointment letter is signed by the Associate Dean for Faculty Affairs, John Penn,

2

Ph.D. Thus, Dr. Holt's employment with VUMC is entirely dependent on her status at VU.

6. The VU Faculty Manual, which governs aspects of Dr. Holt's employment, specifically references the application of Title IX to faculty, such as Dr. Holt, and referral to the VU Title IX office as an avenue for complaints of discrimination, harassment or retaliation. However, the Faculty Manual also recognizes the filing of a civil action as an avenue for Title IX discrimination, harassment or retaliation violations.

7. The VU Human Resource Policies also outline benefits of employment for VUMC Faculty, including educational benefits for dependents. As such, there is overlap in benefits for VUMC and VU employees.

8. Defendant Vanderbilt University Medical Center ("VUMC") is a nonprofit corporation. Its principal place of business is 1161 21st Ave South Medical Center North D-3300, Nashville, TN 37232. Its registered agent for service of process is National Registered Agents, Inc., 300 Montvue Road, Knoxville, TN 37919-5546.

9. VU and VUMC operate under an Academic Affiliation Agreement to "support one another and fulfill their related missions. As part of this agreement, based on their roles and appointments, faculty may be employed by VUMC. These faculty continue to have their faculty appointments with Vanderbilt University and are covered by the Faculty Manual. Such faculty render services to, and are responsible to, both Vanderbilt University and the (VUMC)." https://www.vanderbilt.edu/faculty-manual/part1-the-university-and-its-governance/ch-1-about-vanderbilt-university/ (5/23/2023).

10. At all material times, Defendants VU and VUMC have jointly employed Dr. Holt as defined by Title VII of the Civil Rights Act and the Tennessee Human Rights Act.

11.     Plaintiff complies with all conditions precedent to the filing of her claims under Title VII of the Civil Rights Act of 1964 pursuant to 42 U.S.C. § 2000e *et. seq,* to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; the EEOC issued Plaintiff a notice of Right to Sue and this action was amended within 90 days of receipt of the EEOC's Notice of Right to Sue.

## FACTUAL BACKGROUND

### A.  Dr. Holt's Distinguished Career

12.     Dr. Holt has been employed by Vanderbilt University and VUMC since February 2003. She is currently a Physician and Full Professor in the Orthopaedic Surgery Department for VU and VUMC.

13.     Dr. Holt has spent the majority of her 25-year professional career with VU and VUMC and is very dedicated to the Vanderbilt community. After completing her orthopaedic surgery residency at VUMC in 2001, she joined the faculty at VU as an Assistant Professor in February 2003.

14.     Dr. Holt's clinical emphasis is on bone and tissue sarcoma, cancer surgery and adult reconstruction.

15.     In 2013, Dr. Holt achieved Full Professorship. She has taken on numerous roles and leadership positions, including Program Director and Vice Chair of Education.

### B.  Dr. Holt's History of Championing Diversity

16.     Since becoming the head of VUMC's Orthopaedic Surgery Residency program, Dr. Holt helped cement the program as one of the top 10 residency programs in the country. Dr. Holt also raised the percentage of female residents in Vanderbilt's program as high as 40% -

significantly higher than the average number of female orthopaedic surgical residents in the country.

17.     In keeping with her passion for creating a more diverse and equitable orthopaedic residency program, which ultimately reflects the patient population, Dr. Holt and a co-author published a 2016 article "National Orthopedic Residency Attrition: Who is at Risk?" In this publication, Dr. Holt and her co-author surveyed demographic data of 146 residency programs and determined that single females without children are statistically more likely to undergo attrition. As a result, the conclusion was that consideration should be given to targeted mentoring of that resident group.

18.     Dr. Holt's success as a professor and leader is well-documented. She won the Vanderbilt Resident Teaching Award twice, as well as the national Miller Review Teaching Award seven times in her thirteen years of participation. She is also a frequent guest lecturer at residency programs across the country and is often asked to review other residency programs for education re-evaluation.

19.     At Vanderbilt, currently only 3 out of the 40 total surgical orthopaedic faculty are female.

**C. Discriminatory and Retaliatory Actions Taken Against Dr. Holt**

20.     Dr. Holt, the only gay, female Full Professor in the Orthopaedic Surgery Department, and only one of three female surgeons in that department, was unjustifiably removed from her roles as Program Director of the Orthopaedic Residency Program and Vice Chair of Education on March 3, 2022.

21.     Dr. Holt held these roles for thirteen and nine years, respectively, without incident. This changed once Dr. Rick Wright, a straight male, was appointed as Chair of the Department.

22.     Since Dr. Wright was appointed Chair, the Department has hired thirteen new surgical faculty members. All thirteen are men, no women. Nonetheless, Dr. Holt continued to pursue VUMC's professed diversity goals by giving Dr. Wright the names of interested outstanding female candidates for positions open for recruitment. These female candidates were not interviewed, and the positions were ultimately filled by men. A faculty of majority male surgeons is both intimidating and exclusionary. Dr. Wright has told Dr. Holt on more than one occasion that "orthopaedic surgery is just different for women, it's different for you."

23.     Despite Dr. Holt's achievements, including building VU and VUMC's Orthopaedic Residency Program into a top 10 program within the United States and fostering one of the most diverse residency programs in the field of orthopaedic surgery, Dr. Wright abruptly and arbitrarily removed Dr. Holt from her positions. Dr. Wright's only justification was that Dr. Holt's removal was "in the best interest of the department."

24.     Dr. Wright replaced Dr. Holt in her role as Program Director with a straight male colleague, an Assistant Professor with no experience as a residency program director. There was no search committee or open interviews for the position.

25.     Dr. Wright's decision to remove Dr. Holt was motivated by discriminatory and retaliatory reasons.

26.     Not only does this action run counter to VU and VUMC's professed goals of promoting diversity, equity and inclusion, but Dr. Wright's actions are a morale killer within the residency program.

27.     The decision to remove Dr. Holt sent a chilling message to female residents and doctors that they are not valued, with many believing that if someone as esteemed as Dr. Holt can

be attacked and removed in such an arbitrary manner, and likely due to her strong advocacy for diversity and inclusion, then they have no hope of success.

28. The manner in which VUMC, VU and Dr. Wright handled the sudden demotion caused Dr. Holt harm to her professional career and reputation. For example, Dr. Wright communicated to the orthopaedic surgery residents that he cannot discuss the reasons for Dr. Holt's demotion because "it isn't fair to Dr. Holt to discuss [the matter]." He also communicated to the faculty that he cannot discuss the decision due to "legal reasons." These statements imply that she was removed involuntarily because she did something wrong, which she has not.

29. The discriminatory treatment directed toward Dr. Holt has been ongoing and is well-documented.

30. For example, in 2019, it came to Dr. Holt's attention that, despite her extensive experience, she was being paid less per work RVU for the same surgical procedures than her male counterparts. Only after Dr. Holt brought the discrepancy in pay to Vanderbilt's attention was her salary raised.

31. In addition to Dr. Wright's failure to hire or promote female surgeons within the department, he also expressed clear preference for male surgical residents. For example, the orthopaedic surgery residency program matched 5 white men in 2020. After this match, Dr. Wright sent Dr. Holt, who as Program Director oversaw the resident match, a bottle of bourbon with a note of congratulations. In contrast, in 2021, the residency program matched three women and two residents of color. In response, Dr. Wright simply sent Dr. Holt an email saying "Thanks. Great list." He subsequently commented on this class that "they look different, this class looks different than other classes." In 2022, after successfully completing the interview season and a successful

7

match of three women and two men, Dr. Wright failed to even acknowledge the match results with Dr. Holt.

32.     Despite Dr. Holt's pattern of success as head of the Residency Program and Vice Chair, she began receiving inconsistent, negative feedback and job-threatening overtures from Dr. Wright. In May 2021, Dr. Holt met with Dr. Wright and the Department's Administrative Director, Mary Duvanich, to discuss the Department's internal review. During this meeting, Dr. Wright expressed concern over Dr. Holt's work performance and told her that she had to start meeting with a coach in order to keep her position. Prior to this, there had been no concern raised about her performance. To the contrary, Dr. Holt had received a raise on December 10, 2020, for the 2021 year.

**D.  Retaliation Against Dr. Holt Intensifies**

33.     Dr. Holt began to meet with the coach at her own personal cost. Concerned about this the May 2021 meeting, which contradicted the success of Dr. Holt's programs, she reached out to Associate Dean Kyla Terhune. Dean Terhune connected Dr. Holt with Rochelle Johnson, the VUMC Senior Director of Employee Relations. Dr. Holt relayed her concerns about Dr. Wright's behavior and treatment to Ms. Johnson in early June. Between May and July 2021, Dr. Holt met weekly with Dr. Wright to discuss her role and work performance. Dr. Holt was only given positive feedback on her performance.

34.     On July 22, 2021, Dr. Wright informed the Orthopaedic Department that it had moved from 12th place to 9th place in the Doximity ranking system; he congratulated Dr. Holt for her "stewardship of the residency." In June 2021, Dr. Holt received the second highest teaching score in the department and had an extremely positive annual review with Dr. Wright.

8

35. However, one week after the Doximity rankings were released and applauded, Dr. Holt was called into a meeting with Dr. Wright and Mary Duvanich. Dr. Wright gave Dr. Holt a letter dated July 29, 2021, to read. The letter alludes to performance issues and unsubstantiated complaints. Despite Dr. Holt's repeated requests for more information, she was provided no further information. Shockingly, the letter, while recognizing Dr. Holt as a "gifted surgeon and clinician" who "provide[s] outstanding service," also accuses Dr. Holt of "creating an environment of inequity and harassment." In other words, due to her advocacy and speaking out about inequity, she is being accused of inequity by a white male in a predominately male department.

36. The July 29 letter also implicitly acknowledges Dr. Holt's protected activity and transparent views about inequity by chastising her for "making disparaging comments to the residents as a group about members of our faculty." And, further chilling her speech by warning "your feelings regarding members of the faculty must remain in private interactions with subordinates and staff. Any concerns you have regarding faculty should be brought to the attention of the division chief and department chair [Wright]."

37. Dr. Wright insisted that the July 2021 letter only dealt with issues that occurred from May 2021 to July 29, 2021, despite his failing to bring these issues to Dr. Holt's attention during their weekly one-on-one meetings over those months. Dr. Wright made it very clear that Dr. Holt's job and career were threatened, despite Dr. Holt vehemently objecting to the contents and veracity of the letter. The letter did not provide concrete goals, rather requiring "a significant and sustainable improvement" which was never reviewed or discussed but was certainly achieved and confirmed in meeting after meeting. The follow-up internal review process commended Dr. Holt for "model behavior" in responding to their requests. The internal review findings were contradictory to the contents of the letter.

9

38.     On August 6, 2021, Dr. Holt relayed her concerns about the letter and the ongoing harassment to Ms. Johnson. Ms. Johnson assured Dr. Holt that she would look into the issues and get back to her. She never did.

39.     Dr. Holt also met with Dr. Steve Meranze, the faculty affairs representative, to relay her concerns about the July 29 letter. Dr. Meranze told Dr. Holt he would look into it, discuss with Dr. Terhune and get back to her. He never did.

40.     In September 2021, Dr. Holt reported Dr. Wright's continuing discriminatory and retaliatory behavior to Jaclyn Thomson, Director of Employee Labor and Relations. Ms. Thomson put the onus on Dr. Holt to decide what, if any, action needed to be taken. Dr. Holt needed guidance on being a victim of harassment and discrimination but was not given any by VUMC. VUMC heard her concerns and did not address the discrimination, harassment and retaliation Dr. Holt brought to their attention.

41.     Over the fall and into spring of 2022, Dr. Holt met 15 times with Dr. Wright and Mary Duvanich on a schedule they provided. Dr. Wright forbid any of the Associate Program Directors from attending the meetings, except under certain circumstances he set. These meetings were hostile and uncomfortable for Dr. Holt. Mary Duvanich is an administrative officer and has no active role in the Orthopaedic residency program. The reason for her attendance at the meetings was never defined.

42.     Dr. Holt was the only faculty member to have repeated meetings with Mary Duvanich serving as a 'witness' for Dr. Wright. Attendance at these meetings was made a condition of Dr. Holt's job. During these 15 supervised meetings, Dr. Holt received positive feedback. Moreover, Dr. Holt continued to successfully operate in the role of Program Director and Vice Chair of Education. Dr. Holt led the entire process of reviewing applications for the

Orthopaedic Surgery residency program, interviews, and the match process. Despite the internal challenges, harassment, discrimination and hostility she was facing, Dr. Holt continued to persevere, and the residency program continued to succeed and gain greater traction and praise in the Orthopaedic community.

43. Dr. Holt's ability to do her job was impeded by Dr. Wright. Although guiding and completing a quality and safety project is the responsibility of the Program Director, Dr. Wright specifically told Dr. Holt she was barred from participating in the project, instead appointing two straight male colleagues for the role.

44. When the department undertook an initiative in strategic planning, Dr. Wright informed Dr. Holt he was "not putting her on the resident education team on purpose," but at the same time putting equivalent team leaders in charge of leading their strategic planning review. The education team was reviewed by two straight male colleagues who have no role in the educational leadership. These examples are only a few of many.

45. Dr. Holt was previously an Associate Program Director and Program Director for three different chairs (Spengler, Schwartz, Kuhn) who provided nothing but the highest praise and respect for her.

46. Despite 17 years of success, and directly on the heels of a successful match process, on March 3, 2022, Dr. Wright informed Dr. Holt that she was being removed as Program Director and Vice Chair of Education. Byron Stephens, a straight male with minimal experience, replaced Dr. Holt as interim Program Director. Greg Mencio, a straight male, replaced Dr. Holt as Vice Chair of Education.

47.     On March 28, 2022, after having been met with nothing but continued discrimination and retaliation and failure to act on her concerns of discrimination, Dr. Holt, through her attorneys, sent a formal complaint of discrimination and retaliation.

### E. Vanderbilt Finally Conducts a Half-Hearted Investigation Into Dr. Holt's Concerns

48.     Nearly three months after having her attorneys reach out to Vanderbilt, and approximately a year after complaining internally, on June 23, 2022, Dr. Holt was finally "interviewed" regarding her complaints.

49.     To her knowledge, none of the witnesses, including residents and other doctors, particularly females in the department, were interviewed.

50.     On August 17, 2022, VUMC finally notified Dr. Holt, through her attorneys, that its investigation was complete. Although she was never provided a copy of the investigation, she was informed that VUMC found no discrimination or retaliation.

51.     As a result of the half-hearted investigation, Dr. Holt had inquired, again through her attorneys, about moving into a position where Dr. Wright would no longer have control over the terms and conditions of her employment.

52.     Dr. Holt's requests for further discussion and help went unanswered. For months, VU refused to help or even discuss solutions to the discrimination and retaliation, despite Dr. Holt's numerous requests. Dr. Wright was aware of all of Dr. Holt's ongoing complaints, and yet, his discriminatory and retaliatory behavior continued.

### F. Dr. Holt's Pay is Drastically Reduced

53.     On December 5, 2022, Dr. Holt was notified, again by Dr. Wright, that her salary was being cut nearly in half. She was being placed back on the same compensation plan that had previously paid her less per RVU than her male colleagues.

54. Prior to this, Dr. Holt had repeatedly requested not to report to Dr. Wright due to her allegations of discrimination and retaliation.

55. From 2019 until December 5, 2022, Dr. Holt was a salaried employee. Her salary was contingent on her completing 11,000 Relative Value Units (RVUs) per year. RVUs are earned through performing surgical procedures. Each procedure had a specific number of RVUs assigned to it based on the rate of oncology surgeons.

56. Under the new compensation plan, Dr. Holt is no longer salaried. Now, she is paid per RVU earned, which will dramatically decrease her yearly income. Additionally, instead of setting her RVU rates based on a uniform metric, Dr. Wright, the discriminator, will be responsible for determining how much Dr. Holt earns per RVU. Dr. Wright also has control over Dr. Holt's access to the Department's Physician Assistant and residents. This directly affects how many surgical procedures Dr. Holt can complete each year.

57. The VUMC trauma surgeons, all male surgeons under Dr. Wright's supervision, have been allowed to remain on salary.

58. Dr. Herb Schwartz, a male Professor in the Orthopaedic division, has been allowed to remain on salary.

59. In the December 5, 2022, meeting, Dr. Wright also threatened to drop Dr. Holt as division lead for VUMC's Ortho-Oncology Group, again, without any reason or justification. Dr. Wright was incredibly hostile to Dr. Holt in this meeting, making her feel unsafe in her position and career's future.

60. Dr. Wright further went onto to tell Dr. Holt that she needed to stop talking about him and the orthoapaedic program to anyone. This intimidation tactic was meant to silence Dr. Holt's protected complaints of discrimination and retaliation.

13

61.     On December 6, 2022, Dr. Holt filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

62.     On or around December 10, 2022, Dr. Holt was provided a letter confirming her new annualized compensation plan for January 1, 2023, through December 31, 2023 which was based on productivity rather than salary. The letter stated also that "In addition to salary, VUMC and VU provide substantial fringe benefits for faculty, some of which are directly related to salary." To the extent Dr. Holt had any questions she was invited to contact either the Office of Faculty Affairs [VU] or the Benefits Division of VUMC Human Resource Services. Her service to the Department of Orthopaedic Surgery, the Vanderbilt School of Medicine and VUMC was noted. The letter was signed by the President CEO of VUMC, Dean, School of Medicine [VU], Jeffrey Blaser, and Chair of the Orthopaedic Department, Rick Spengler and Rick Wright. Thus, both VU and VUMC took responsibility for the changes to the terms of Dr. Holt's compensation plan and as such, are joint employers.

63.     Dr. Holt has continued to be subjected to continuing harassment. Although she sees more patients than her colleagues, often at a 3:1 ratio, her access to utilize a physician assistant, as well as the residents, has been severely limited.

64.     At the end of December 2022, Dr. Holt was told she was being involuntarily moved out of her office and into a less convenient, much smaller office. A white male was moved into her more convenient, larger office.

65.     Dr. Holt continues to be subjected to a pattern of discrimination, harassment, hostility on the basis of sex and retaliation, including a retaliatory work environment and most recently had her pay effectively cut in half.

## COUNT I
### Sex Discrimination – THRA- VU, VUMC

14

66. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

67. Plaintiff had been subjected to a continuing and on-going campaign of sex-based discrimination and harassment in Defendants' workplace because of her sex, female, and sexual orientation.

68. It is a violation of THRA for employers to discriminate against employees based on sex and sexual orientation.

69. Defendants VU and VUMC have taken adverse employment actions against Plaintiff, including removing her from the position of Program Director and Vice Chair of Education and decreasing her salary. Defendants' actions violate the THRA.

70. Plaintiff has been subjected to a hostile work environment due to her sex and sexual orientation. Dr. Holt has been subjected to discriminatory and intimidation tactics by Dr. Wright, as well as having the conditions of her employment altered by not having access to enough resources, unequal pay, or adequate access to staff.

71. Defendants knew or should have known of the discrimination and is vicariously liable for the harassment perpetrated by management and for failing to remedy harassment and discrimination in the workplace.

72. As a direct and proximate result of Defendants' unlawful acts, Plaintiff suffered and continues to suffer emotional and physical injury, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, lost earnings, attorney's fees, costs, interest and any other legal and equitable relief to which she may be entitled.

## COUNT II
### Retaliation – THRA- VU, VUMC

73. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

74.     It is the public policy and law of the State of Tennessee that employees must be able to exercise their rights under state and federal discrimination law without fear of reprisal or penalty from an employer.

75.     Plaintiff objected to and protested sex-based discrimination in the workplace.  Such actions by the Plaintiff are statutorily protected activities under the Tennessee Human Rights Act.

76.     In violation of the THRA, Defendants VU and VUMC took adverse employment actions against Plaintiff in taking away her Program Director and Vice Chair positions, as well as reducing her pay by half.

77.     Defendants retaliated against Plaintiff because of her protected activity by taking adverse action against Plaintiff and subjecting Plaintiff to a hostile work environment.

78.     As a direct and proximate result of Defendants' unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

<u>COUNT III</u>
**Sex Discrimination - Title IX, 20 U.S.C. § 1681- VU, VUMC**

79.     Plaintiff restates and incorporates herein the allegations in the above paragraphs.

80.     Defendants VU and VUMC receive federal funding as defined under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a).

81.     Section 901(a) of Title IX provides:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

16

82. Defendants VU and VUMC receive federal funding for the operation of educational and residency programs.

83. Defendants VU and VUMC jointly employ Dr. Holt, as recognized by the Faculty Manual, which governs terms and conditions of her employment, including complaints of discrimination, harassment and retaliation under Title IX.

84. It is public policy and federal law that no person shall be excluded from participation, denied the benefits of, or subjected to discrimination on the basis of sex under any education program.

85. Defendants have excluded Dr. Holt from participation and denied her the benefits of her role at VUMC by removing her from the positions of Program Director and Vice Chair of Education, as well as reduce her pay, on the basis of her sex.

86. Further, Dr. Holt has been consistently refused the resources she needs in order to perform her job at VUMC and VU due to her sex.

87. VUMC and VU were deliberately indifferent to known acts of discrimination against Dr. Holt.

88. As a direct and proximate result of Defendants' unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

<u>COUNT IV</u>
**Retaliation - Title IX, 20 U.S.C. § 1681- VU, VUMC**

89. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

90. Defendants receive federal funding as defined under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a).

91.     It is public policy and federal law that employees must be able to exercise their rights under state and federal discrimination law without fear of reprisal or penalty from an employer.

92.     Defendant has excluded Dr. Holt from participation and denied her the benefits of her role at VUMC by removing her from the positions of Program Director and Vice Chair of Education, as well as reduce her pay, due to her complaints of sex-based discrimination.

93.     Further, Dr. Holt has been consistently refused the resources she needs in order to perform her job at VUMC in retaliation for her complaints of sex-based discrimination.

94.     VUMC and VU retaliated against Dr. Holt for repeatedly raising concerns of gender inequity in the residency program and discrimination she was experiencing by first taking away positions of leadership, but then also drastically reducing her pay.

95.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

## COUNT V
### Title VII – Discrimination –VUMC

90.     Plaintiff restates and incorporates herein the allegations in the above paragraphs.

91.     Plaintiff had been subjected to a continuing and on-going campaign of sex-based discrimination and harassment in Defendants' workplace because of her sex, female, and sexual orientation.

92.     It is a violation of Title VII for employers to discriminate against employees based on sex and sexual orientation.

93. Defendants have taken adverse employment actions against Plaintiff, including removing her from the position of Program Director and Vice Chair of Education and decreasing her salary. Defendant's actions violate Title VII.

94. Plaintiff has been subjected to a hostile work environment due to her sex and sexual orientation. Dr. Holt has been subjected to discriminatory and intimidation tactics by Dr. Wright, as well as having the conditions of her employment altered by not having access to enough resources, unequal pay, or adequate access to staff.

95. Defendants knew or should have known of the discrimination and is vicariously liable for the harassment perpetrated by management and for failing to remedy harassment and discrimination in the workplace.

96. As a direct and proximate result of Defendants' unlawful acts, Plaintiff suffered and continues to suffer emotional and physical injury, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, lost earnings, attorney's fees, costs, interest and any other legal and equitable relief to which she may be entitled.

## COUNT VI
## Title VII – Retaliation –VUMC

97. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

98. Plaintiff objected to and protested sex-based discrimination in the workplace. Such actions by the Plaintiff are statutorily protected activities under Title VII.

99. In violation of Title VII, Defendant took adverse employment actions against Plaintiff in taking away her Program Director and Vice Chair positions, as well as reducing her pay by half.

100. Defendants retaliated against Plaintiff because of her protected activity by taking adverse action against Plaintiff and subjecting Plaintiff to a hostile work environment.

19

101.    As a direct and proximate result of Defendants' unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

## RELIEF REQUESTED

Dr. Holt respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits and actual damages;

3. Reinstatement or front pay;

4. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

5. Punitive damages;

6. Attorneys' fees and expenses;

7. Prejudgment interest and, if applicable, post-judgment interest; and

8. Such other and further legal or equitable relief to which she may be entitled under the law.

Respectfully submitted,

HMC CIVIL RIGHTS LAW PLLC

*/s Heather Moore Collins*
Heather Moore Collins BPR# 026099
Caroline Drinnon BPR # 037016
Ashley Shoemaker Walter BPR #037651
HMC Civil Rights Law PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
caroline@hmccivilrights.com

20

ashley@hmccivilrights.com

21

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished to via the

Court's electronic filing system on August 14, 2023 to the following:

William S. Rutchow, BPR No. 017183
Benjamin P. Lemly, BPR No. 035225
Erin A. Shackelford, BPR No. 034788
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Truist Plaza
401 Commerce Street, Suite 1200
Nashville, TN 37219-2446
Telephone: 615-254-1900
Facsimile: 615-254-1908
William.rutchow@ogletreedeakins.com
benjamin.lemly@ogletreedeakins.com
erin.shackelford@ogletreedeakins.com

*/sHeather Moore Collins*
Heather Moore Collins